case, which is Crews v. Commissioner of Internal Revenue, No. 20-10916. We have Mr. Johnson here for the petitioner. Ms. Del Sol here for the respondent. Mr. Johnson, no hurry, but whenever you're ready. Thank you. Very well. You may proceed. May it please the Court. Your Honor, this is a, obviously, Your Honors know this is a tax court case. It's a unique collection due process case. It's not the normal one where you evaluate different options of collection, things like this. This is more analogous to one that is tried on the merits. Now, we made it clear from day one we weren't trying to get a second chance to re-argue or re-litigate the merits through the collection due process proceeding. We just want the Internal Revenue Service to look back what happened in a previous appeal and determine that the trust fund recovery penalties were previously conceded. So that was the issue that was raised in the collection due process that was commenced in 2015. The tough fact for you, obviously, and so you might as well go ahead and tackle it, is that Johnson's letter only lists the one company. So I think that's like your burden here is to convince us why, if the only thing that the IRS is ever saying, speaking, refers only to one company, why should we look behind it? That's correct, Your Honor, and that's actually my point. If you look at the evidence, which we submit as preponderance of the evidence because it's similar to or analogous on the merits case. But isn't the burden on your client? Yes, but it's by preponderance of the evidence. Even if it was clear and convincing, we think that if you look at the evidence, they have that one letter versus everything else. I guess just in fairness, sort of folding into that standard is also a standard of review, which here seems like it's some kind of deference. It's called abuse of discretion, but this seems heavily factual to me, so it might merge into clear error, but it's something like that on a pellet review, right? On the facts, it would be clear error, but this was a fully stipulated case, so the facts are more or less undisputed. So in our conclusion to our reply brief, we noted Occam-Razor, the simplest explanation is the most likely one. So, as Your Honor has already pointed out, the government rests its case on that one determination letter of May 23rd. Now, what do we have in rebuttal? Well, the appointment letter. The appointment letter references erosion stopper in the Four Quarters. It's addressed to Mr. and Mrs. Cruz, and the record is undisputed that Mrs. Cruz had nothing Her case did not involve Casey Earthmover. It only involved . . . I guess counsel, since this case wasn't tried before a jury, it was, as you said, agreed to and submitted to the judge without a trial, and the facts were stipulated to. The issue I'm having is, even if I agree with you that there is some discrepancy or there's something ambiguous about the May 22, 2013 entries that Bradwell had, the history sheet entries where she said, called and spoke with Victoria Johnson, who was the officer, and addressed the status of the case, and she suggested . . . she further advised that the case is being reviewed with her general manager. The T.P. taxpayer was found not liable, and the assessments are being abated against him. The issue is, we don't really know what that means because she didn't testify. There was no deposition, so we're sort of left in the dark as to what does that mean. Correct, but again, if we go back and look at the history sheets, which the appeals settlement officer did review the ACAR, which is the appeals case . . . escapes my mind right now . . . the appeals case activity record. She did not review the ACM, which is the appeals case memorandum, and she didn't review the ICS history sheets. So, you know, we never had a fair opportunity during the collection due process for her to review that information. The information was also available on a thumb drive, which the brief and the tax court opinion shows the dialogue back and forth where she was trying to secure that information off the thumb drive. But didn't Johnson then, after she referenced the thumb drive, she then reports back, it's not there? Well, she said, I have nothing . . . It's a matter of interpretation. And so the tax court interpreted that to be that there was nothing on the thumb drive. Correct. But again, it's just the totality, even under clear and convincing, which we're not saying it is the standard. We have the ICS history sheets. We have the ACAR. We have the cruise position paper, which addresses both companies. We have counsel's position paper addressing both companies. We have counsel's repeated letters referencing both companies. We have counsel's confirming letter of December 21st confirming the full concession. Let me just ask you this. Okay, so we know the back and forth, and when the taxpayers were communicating with Johnson, the taxpayers were mentioning, or Mr. Cruz was mentioning, both companies and all the quarters but without specifying which quarters applied to which company. And then at the end of this process, after these letters that weren't specifying which quarters went to which company, Johnson issues a letter that only references one company. And I guess that's not noticed until the IRS starts to levy and realize, oh, we still have an outstanding company. So at least in my mind, we have this letter where the IRS agent only ruled on one company, so it appears that perhaps the one company issue is still pending with the IRS agent. But that's not what is on appeal. The tax court makes that clear, that that argument wasn't raised to say, oh, that's still pending, and the agent just hasn't determined it yet. Am I right in thinking that, if perhaps the agent just ruled on one and it's still pending but that's not an issue that's on appeal? Well, a lot of the court's opinion on what was raised, the court's position was that we need to raise it in the collection due process. They did not say we need to raise it in the petition. We strongly disagree with that because we don't have a crystal ball. We don't know what the appeals settlement officer is going to look at. We didn't know she wasn't going to pull the ACM. We didn't know that she wasn't going to look at the ICS history sheets where tax examiner Bradwell was shadowing the company. So the petition that we filed with the tax court is, in our view, what puts things at relevance, and it's very broad. 5A alleges that the appeals settlement officer and ICM are about out of time. If you could just wrap this thought up, you've got plenty of time on rebuttal. 5A, we allege that the appeals officer conceded the issue. 5B, the trust fund recovery penalty assessments are null and void. 5C, there was a ministerial and clerical error. Now, no offense to your honors, but you work for the government. You understand how sometimes those things can work. In this case, it started out where she referenced erosion stoppers. We walked you through on the brief where it was set up under erosion stoppers, and then during the transition, somehow it got flipped. But I'm looking at the statement of issues in your blue brief, and you're talking about whether the administrative record establishes that the Office of Appeals had previously conceded the liabilities relating to erosion stopper. There was no indication to me that you're appealing the determination that the issue wasn't properly before the tax court as to whether the other company, the liability issue, may still be pending before the IRS. The simple answer, the only way I can respond to that, is everything that's in the record or should have been in the record to show that these are null and void liabilities at the time the revenue officer showed up, in our view, is relevant in that issue. Thank you very much. Yeah, you've got, I think, a full seven minutes on rebuttal. All right, Ms. Del Sol. Good morning. May it please the Court, Ellen Del Sol from the Department of Justice for the Commissioner of Internal Revenue. Counsel, before you proceed, I just want to understand, and I'll ask this on rebuttal, but my understanding is that we're here today only on the determination of whether or not the IRS abated the liabilities for erosion stopper, not whether or not you were entitled to the penalties. That is correct, Your Honor. The issue of whether the merits of the underlying liability the taxpayers conceded, they're not challenging here. They're simply claiming that the liability was previously abated by Appeals Officer Johnson. And here, as Your Honors have already pointed out, the taxpayer did bear the burden of proof in the collection due process proceeding and failed to meet that burden because their sole evidence of this supposed agreement that he wasn't liable was based on this May 23, 2013 letter, which was the only thing in the record that abated any trust fund or called for releasing a liability for any trust fund liabilities. And that letter plainly on its face . . . Let's talk about the . . . Only refer to Casey. I'm sorry. Curry, who also was investigating it after the fact, and when she spoke to Officer Johnson based on her entry notes, she indicated that all the assessments had been abated. Now, what that means, we don't know. I think you may be confused, Your Honor. You may be referring to Officer Bradwell's history. Bradwell, yes. She was actually . . . The taxpayer filed a formal refund claim, which Examiner Bradwell had reviewed and denied for both corporations. And then once that formal refund claim is denied, that starts the two-year statute of limitations for bringing a refund suit. But there's also the option for our taxpayers to ask for an informal reconsideration in the Office of Appeals, which is what Appeals Officer Johnson was doing. And apparently Tax Examiner Bradwell was tracking that and making notes based on communications with Appeals Officer Johnson. And she did say that the tax was abated, but she didn't specify which company. So it would be a real jump to say that that was a record of abating happening with both companies. And what she, in fact, did was only to abate . . . I guess I'm not really sure about that. I mean, the taxpayer was . . . every time the taxpayer opened its collective mouth, it said both companies, both companies, both companies, both companies. So when she says, when Bradwell says, not liable, not responsible, it seems to me the rational inference from that is neither company, if you will, is liable. Well, if I could make two points with regard to that, Your Honor. First of all, Tax Examiner Bradwell would have been the one that ultimately abated any liabilities based on the information she got from Appeals Officer Johnson. And what she did was to only abate the Casey Earthmovers liability. So that reflects her understanding that that was all we were talking about. Let me ask you a question. When we're talking about received and reviewed all three TFRP packages from appeals, those three TFRP packages from appeals, what are they referring to? Well, Your Honor, I think that that's one of the things that's ambiguous here, but they certainly don't necessarily mean that. But this is the question I have then. Why isn't it appropriate then to remand this back to make these determinations? Because it seems to me that some of these things are very up in the air and ambiguous. I understand it's his burden, but, I mean, you don't get a free pass either, do you? Well, first of all, Your Honor, if I could just address the previous question about clarifying the inferences. Here Appeals Officer Johnson was addressing claims from taxpayer's wife and daughter as well, which would add up to three, taxpayer, his wife, and his daughter. And the wife definitely had claims that that was. Is that what packages refers to? I think so, Your Honor. And I think that the fact that there was a ruling. Do you refer to taxpayers as packages? Well, I think that just kind of, that sort of seems. The papers would perhaps be packages. I mean, I don't work in the IRS, so I'm not 100% sure what she was referring to. And obviously no one called Tax Examiner Bradwell or Appeals Officer Johnson to the stand here to ask that question. But I think, you know, that would make sense, that there were three taxpayers and they would have had papers in packages, so that would have made sense. I don't know that that's, in fact, accurate because it's not in the record. But I think, you know, the other point is that Erosion Stoppers was ruled on with respect to Mrs. Cruz. So certainly the fact that the letters might have referred and communications back and forth might have listed both corporations or the two corporations with a slash, that that doesn't necessarily mean that Mr. Cruz had a claim that was before Appeals Officer Johnson with respect to Erosion Stoppers. And in any event, the taxpayers pointed to nothing that actually says that there was a decision, a rule. As the tax court found, there was no ruling with respect to Erosion Stoppers. So if the taxpayer brings the two companies to the IRS and sends multiple letters referencing both companies and all the quarters involved, and the IRS issues a decision on one company, what is the status? Is the other company still pending before the IRS? Are we supposed to assume from silence that the claim was denied? What are we supposed to make of this? Well, this procedure, after the formal refund claim was denied, is just a reconsideration procedure that specifically under the Internal Revenue Code, Section 6532b-4, does not toll the statute of limitations on a refund suit. And so this sort of administrative process for getting a second look, it's something that's already been decided, is something that administratively is handled in the IRS, and the Internal Revenue Manual provisions that the taxpayer cites in their brief don't have the force of law. The remedy, if they don't get an answer from the IRS, is to file a refund suit. In the normal course, though, I mean in the normal course, to Judge Branch's question, if the taxpayer says both companies, both companies, both companies, and you issue a letter, you realize you've got both companies before you. You need to decide both companies. And you issue a letter that on its face only refers to one. In the normal course, would you issue a letter with respect to the other one that says denied? I mean, like why are we still waiting on the other company? That's the question, I think. Well, I think part of that reason might be that Appeals Officer Johnson didn't think that was before her because it was unclear. It seems hard to imagine when everything he said, the taxpayer said, was both companies, both companies, both companies. Well, the communications were from counsel for both him, for him and his wife and his daughter, with respect to all these companies and all these multiple, as Judge Lagoa put it, packages. Oh, no, I didn't say packages. You did. I certainly would never refer to taxpayers as packages. Your Honor, I'm sorry if I was unclear about that. But I think what's important here is that I really like to emphasize that this court and its sister circuits have held in this collection due process context that the review is for abuse of discretion. And the question really before this court is whether Appeals Officer, or excuse me, Settlement Officer Curry abused her discretion in looking at this record and determining that taxpayer hadn't proven their case. And I guess I think kind of the pushback you're getting collectively from us is if abuse of discretion in this context, this kind of factual context requires us to find that there's no sound basis in fact for the determination, and all you really have on your side of the ledger is the letter, you know, the letter, not even the body of the letter, but the caption of the letter, which refers to one company. And the balance of the record, I think at the very least arguably, suggests that that caption is just a scrivener's error. Well, Your Honor, the tax court, I think, even though we do think abuse of discretion should have been the review the tax court applied, and it did find that there was no abuse of discretion here, it alternatively did look at what would happen if it didn't de novo review, and it looked further beyond the record, and it found that there was nothing ruling in the taxpayer's favor on the erosion stopper claim, and it found that there was really, you know, this question in the record back and forth about whether a taxpayer had really put this before Appeals Officer Johnson. And given this informal context and his failure to put forth in his request for reconsideration any clear package, you know, that actually did include all the letters of determination and his prior refund claims that he was seeking reconsideration of, it's very possible that Appeals Officer Johnson didn't think that was before her. How is that possible? Because Appeals Officer Johnson didn't have an actual meeting in December of 2012 with the crews, with the husband and wife, and there was a discussion about, we don't have a transcript of it, but there was a discussion about both companies. I mean, that's my understanding. Appeals Officer Johnson definitely did issue a ruling with respect to erosion stopper that the wife was liable. That, of course, doesn't mean he's not, because more than one person can be a responsible person under Section 6672, and the government can collect from any responsible parties up to the full amount of the tax. But that fact, you know, the fact that erosion stopper was discussed is certainly not determinative, and the tax court in its de novo review didn't reach a different conclusion. It looked at everything, including the thing, it gave wide latitude to look at things outside the record. The taxpayer didn't do an additional discovery to try to get more information from Appeals Officer Johnson or ask for a trial and calling Appeals Officer Johnson, which, given the de novo review, the taxpayer presumably could have gotten but rested on the stipulated record. And when the tax court reviewed that, Judge Morrison reached the same result as the settlement officer Curry had, and I think that just really confirms that she didn't abuse her discretion in concluding that there had been no clear ruling in taxpayers' favor here. Whatever was before Appeals Officer Johnson, she didn't grant a ruling relieving him of a liability for those taxes. And without that, you know, whatever should have been done by the Office of Appeals, and maybe there should have been a letter of disallowance, I'm not sure. I mean, you presumably know, I guess doubling back to my question. Is that what would have happened in the normal course? In the normal course, would a disallowance letter, a denial letter, have gone out? I think that that's probably what would have happened in the normal course. But this wasn't a pro se taxpayer. This was a taxpayer represented by counsel, and it was very clear from the disallowance letter from the refund claim that the statute of limitations was running. And when that was the case, he could have brought a refund. The letter of May 23rd was over a year, 15 months before the statute of limitations ran. Fifteen months went by. Nothing else happened. There was no ruling with respect to erosion stopper. In that time, taxpayers counsel never went back and asked the Office of Appeals whether there was going to be any further ruling, and they let the statute of limitations for a refund claim run without taking any action. And in a refund suit, that would have given taxpayer of the avenue in court to challenge his liability. And, you know, so if he thought his refund claim shouldn't have been denied and Appeals Officer Johnson should have granted relief, he could have gotten that from the court. Let me ask you a question about erosion stoppers with respect to the wife, Mrs. Cruz. So she received a letter saying that she was liable for the penalties. Also, yes. Okay. So is he then, is the IRS then seeking a double recovery? No, Your Honor. The Supreme Court's Slodo opinion, which is cited in our brief, the way the trust fund penalty works is when a corporation fails to pay over its employment taxes that are held in trust for the government, that's like the employer's share of Social Security, Medicare, that sort of thing, then that money is held in trust by the company, and if it's not paid over, the government under Section 1672 can assess these trust fund penalties against any responsible officer of the company who could have caused the taxes to be paid but willfully failed to do so. And basically that means voluntarily preferring other creditors. Again, that's my question. So the IRS is seeking the recovery from either or at this moment in time? Either or, but only one recovery. And it's because it didn't recover it from the company, that's why it pursues the responsible person. So the employment taxes only get recovered once. This is just a provision that makes the government whole when responsible officers and owners of corporations withhold the taxes from employee wages, don't pay them over to the government, and then the government never gets its Social Security payments and such that were withheld from employee wages. So your response to what the taxpayer is saying is, okay, there may be some questions in the record, but we have an abusive discretion standard of review, and perhaps more could have been done to make a record that's more clear, but the taxpayer had that burden, didn't call Officer Johnson, didn't notice when the letter came out that the letter only referenced one company. And for that, I guess you would wrap that in and say that's also why we shouldn't remand. That is correct, Your Honor. And also because I think that as the tax court did review even more information in addition to what Settlement Officer Curry did, the taxpayer did a FOIA request, and the tax court looked at all that and found that nothing else would have shifted its view of the evidence anyway. So I think there's really nothing to be gained, and a remand in a CDP place is only appropriate if there's something to be gained by it, and I think there's nothing more to be found here, and the taxpayer certainly had every opportunity to get this reviewed. And the burden of proof, I would emphasize, is on taxpayer, and following that burden, how that burden falls is an abusive discretion review. So I think Settlement Officer Curry's viewpoint should be given deference, and we would ask that this court affirm. I see my time is up. If there are no further questions, thank you for your time. Thank you very much, Ms. Del Sol. All right, Mr. Johnson, you've got seven minutes. Mr. Johnson, I wanted to ask a question right off the bat about remand. Opposing counsel has just explained that there's really nothing left to happen on remand. You've asked for remand. What would happen on remand? It could be remanded with instructions to look at the appeals case memorandum, which has the facts and analysis and the conclusion, which may shed light on exactly whether that was supposed to be abated, the liabilities for erosion stoppers, and we could also, assuming that thumb drive still exists. Why wasn't that investigation pursued already? Why isn't this the second bite at the apple? Well, we never understood that there was a problem. I do want to correct something. She stated that Tax Examiner Bradwell would have closed out the case, so if she understood it was totally, one, that's not in the record, and two, I don't think that's factually accurate. I think, I don't know for certain now, but it used to be the appeals record section would close that out. But again, the remand would be just look at the record, and the record would show that it was set up with four quarters for erosion stoppers. It was originally set up under Luann Cruz's name. Then she was dropped out. Well, I guess I'm getting at what different, what would happen differently if we remand, other than what has already happened? Well, it may conclusively establish something one way or the other. If she was considering both cases, she would have referenced, okay, I'm sustaining the erosion stoppers, and I'm not sustaining the KC Earth Movement. Are you suggesting that there would be actual testimony? I guess what we're trying to find out is if we remanded it, what would happen? Would there be testimony? Would there be deposition? Why didn't these things occur already? Well, keep in mind, she put in her notice of determination. When you say she, who are you referring to? She had put in her notice of determination that she had examined the appeals claim file or the appeals record. She didn't. She looked at the old ICS history sheets about when they worked up the case. She looked at the ACAR, which is part of the appeals record, but she did not look at Ms. Bradwell's notes. She did not look at the ACM or any of the various documents that would have been associated. I guess what I keep getting back to is all of this could have happened already. It didn't. You lost, and so now if we remand, this just strikes me as a second bite at the apple. You're talking about things that you could have done the first time that you didn't, and that's not why we remand. So tell me why. What would happen that wasn't available before? Well, the events that were occurring during Ms. Curry's review process weren't available to us until months later. We did a FOIA request. It takes a few months to get that information. I guess that's the question. When you were in trial in front of the judge, and I know this was by stipulation, but were these facts available, or did they become available later when you were doing the appeal? You mean the information that she didn't look at this information? Correct. Or that you didn't have access to certain information. We did have that information prior to the trial. It's not in the record. I've also tried to secure that information since the trial, but the Federal Records Center has been closed down because of COVID. But that's what we can accomplish on a remand. But again, we think the evidence is overwhelming. You mentioned these letters of May, but where in the record does she make a note saying that she's going to sustain the erosion stoppers? There's nothing there. Where does Ms. Bradwell say she's going to sustain? What happens when the client gets the May 23rd letter that only references one company and not the other? It would seem to me that if I received that letter, I would be sending a letter in response saying, what about this other company? Why wasn't that done? Because the fact that only one company was mentioned was overlooked. It mentioned the seven quarters. We were expecting a letter that said we're conceding everything. When the letter came in, there was more of a, okay, there's the confirmation. But then wouldn't it make sense to do a clarification saying, I just want to confirm that this in fact resolves as to both companies? With 20-20 hindsight, yes, that should have been done. But again, we received what we thought we were expecting, which was confirmation of the concession. Because there's never any discussion, and there's nothing in the record that ever indicated that erosion stoppers wasn't being included as part of it. And the seven quarters was for both companies? Well, that's one of our points. The erosion stoppers was assessed in the same modules as KC Earthmover. The first assessment was erosion stoppers. I'm sorry, the first one was KC Earthmover, and the second was erosion stoppers. So we believe, and again, this is speculation, I have nothing in the record, but it makes sense, and we've argued it, that when this thing was closed out, the service center gets it, they abate the first liability. They probably didn't even notice the second assessment. So the instructions may not have been clear. Again, if you look at the sequence of events, it's possible the erosion stoppers got dropped off the internal records of the appeals. It started with only erosion stoppers under the land crew's name, and then she was dropped, and then those same four quarters were there through at least February, February 11th, and then when she's closing out the case in May, it looks like they were trying to add the additional quarters for earthmovers, KC earthmovers, and a reasonable interpretation is that somehow it got flipped, and KC came in, and erosion got dropped. Or when it's closed out, the service center didn't realize that they were supposed to abate both the liabilities. All right, very well. Thank you so much on both sides. That case is submitted, and we'll move to the third case.